UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re: | ) |
| | ) |
| WILLIAM F. RUSSELL, JR. | ) Case No. 10-11720-SSM |
| | ) Chapter 13 |
| Debtor | ) |

**MEMORANDUM OPINION**

Before the court is the repayment plan filed by the debtor on April 5, 2010. A hearing was held on May 12, 2010, at which the court heard argument on an objection to confirmation filed by creditor SunTrust Mortgage, Inc. ("SunTrust").[1] Additionally, the court on its own motion raised the issue of whether a mortgage debt against a separate parcel of real estate could be re-amortized and paid out over a period exceeding 5 years. For the reasons stated, the court determines that SunTrust's objection is well-taken and that a "crammed-down" real estate loan must be paid within the term of the plan.

Background

The debtor, William F. Russell, Jr., filed a voluntary petition in this court on March 9, 2010, for adjustment of his debts under chapter 13 of the Bankruptcy Code. On his schedules, he listed ownership of two parcels of real estate, one at 4356 Normandy Court, Fredericksburg, Virginia, and the other at 1370 Cranes Bill Way, Woodbridge, Virginia. The Normandy Court

---

[1] Objections to confirmation were also filed by an automobile lender with respect to the valuation of its collateral and the interest rate to be paid, and by the United States, which asserted that the debtor had not filed a number of federal tax returns. A separate order has been entered resolving the valuation and interest issue with respect to the automobile, and the government's objection has been continued for further hearing.

1

property was his residence at the time he filed his petition,[2] while the Cranes Bill Way property was held for rental.  The residence was valued at $80,000, subject to a mortgage in favor of SunTrust in the amount of $88,635.  The rental property was valued at $232,401, subject to a mortgage in favor of BAC Home Loans Servicing ("BAC") in the amount of $395,000.  Scheduled unsecured claims (not including the unsecured portion of secured claims) total $41,775.[3]

On April 5, 2010, the debtor filed the plan that is currently before the court for confirmation.  It requires the debtor to pay the chapter 13 trustee $753 per month for 36 months.  From this the trustee would pay his own statutory commission of 10%, $663 in attorney's fees to debtor's counsel, priority taxes in the estimated amount of $2,655, an $8,150 secured automobile debt, and $12,299 in mortgage arrears to SunTrust, with the post-petition monthly payments on the mortgage being made directly by the debtor.  No meaningful distribution would be made to general unsecured creditors.[4]

The plan provides for judgment liens held by Lurean Robinson and Riverside Station Home Owners Association to be avoided under § 522(f), Bankruptcy Code.[5]  With respect to the

---

[2] It was represented at the hearing that the debtor had moved from the property after the petition was filed; however, the docket sheet still reflects Normandy Court as the debtor's address.

[3] Adding the $173,258 in deficiency claims created by the plan would bring the total unsecured debt to $215,033.

[4] The plan estimates a dividend to unsecured creditors of 4/100ths of one cent on the dollar.

[5] Oddly, neither creditor is listed on the schedule of secured creditors.  This is clearly improper.  Even if a lien is worthless in economic terms, a creditor with a lien should be listed on Schedule D.  In this case, neither the schedules nor the plan identify which of the real estate parcels is subject to the judgment lien or is the subject of the avoidance motion. Robinson has not filed a proof of claim, but Riverside Station has filed four proofs of claim asserting unsecured claims in

BAC mortgage against the Cranes Bill Way rental property, the plan values the property at

$232,401, and provides the following treatment:

> I. The claim of BAC Home Loans Servicing is secured by a 1st Deed of Trust against 1370 Cranes Bill Way, Woodbridge VA 22191, a single family home which is not the debtor's principal residence. The rights of the secured creditor, BAC Home Loans Servicing (and the actual presently unknown holder of said secured claim, on whose behalf BAC Home Loans Servicing is acting -- its "Principal"), shall be modified as follows:
> 
> A. The secured claim of BAC Home Loans Servicing and/or its Principal shall be reduced to $232,401.00, an amount equal to the present value of the collateral, and shall be paid directly by the debtor at the rate of $1143.27 per month over a term of 360 months from confirmation at a rate of interest of 4.25%. Valuation shall be determined in accordance with Section 3A of this Plan; in the event the value is determined to be different from the $232,401 amount, the loan shall be reamortized at the determined value of the collateral, at 4.25%. Escrow payments for taxes and insurance as required by the loan documents shall be added to the foregoing monthly payments.
> 
> B. The balance of the claim of BAC Home Loans Servicing and/or its Principal shall be paid as an unsecured claim pursuant to Section 4, to the extent proven and allowed.

Plan Section 11. No objection has been filed by BAC with respect to the valuation of the

property or the treatment of its claim.[6]

---

the total amount of $4,174 and secured claims in the total amount of $3,935. The secured claims arise from recorded memoranda of liens, not from judgments. Since § 522(f) cannot be used to avoid statutory liens, it is questionable whether plan confirmation would actually have the effect of avoiding the liens.

[6] BAC Homes Loans Servicing, L.P. did file a proof of claim (Claim No. 8-1) on behalf of The Bank of New York Mellon in the amount of $400,240.79. The underlying secured obligation, as reflected by the proof of claim, is an adjustable rate promissory note dated May 5, 2006, payable to America's Wholesale Lender in the original principal amount of $365,500.00 with interest at 8.85% in monthly installments of $2,777.19 and due in full June 1, 2046. Beginning June 1, 2008, the interest rate is adjustable every six months to 6.85 percentage points (subject to certain caps) over the London Interbank Offered Rate (LIBOR), with the payment amount being adjusted to fully amortize the then-current balance over the remaining term of the loan.

With respect to the SunTrust claim, the plan, while providing for the cure of the prepetition arrears and the making of on-going payments, imposes a number of obligations and restrictions to which SunTrust has objected. These are as follows:

> III. Confirmation of the plan shall impose a duty on Real Property Creditors and/or servicers of such Creditors, with respect to application of mortgage and mortgage-related payments, to comply with the provisions of 11 U.S.C. §524(i). All Real Property Creditors and/or servicers for such Creditors shall have an affirmative duty to do the following upon confirmation of the Plan:
> A. To apply all post-petition payments received from the Chapter 13 Trustee and designated to the pre-petition arrearage claim and the administrative arrearage claim only to such claims;
> B. To apply all post-petition payments received directly from the Debtor only to post-petition payments;
> C. To refrain from assessing or adding any additional fees or charges to the loan obligation of the Debtor based solely on the pre-petition default;
> D. To refrain from assessing or adding any additional fees or charges to the loan obligation of the Debtor (including additional interest, escrow and taxes) unless notice of such fees and charges has been timely filed, and a proof of claim for such additional amounts has been filed and has not been disallowed upon objection of the Chapter 13 Trustee or the Debtor.
> E. To the extent that any post-petition fees or charges are allowed and are added to the Plan, to apply only payments received from the Chapter 13 Trustee and designated in payment of such fees and charges to such fees and charges.
> F. To the extent that any post-petition fees or charges are allowed and are NOT added to the Plan, to apply only payments received directly from the Debtor and designated in payment of such fees and charges to such fees and charges.
>
> Upon completion of all payments due under the Plan, all loans will be deemed current through the date of the filing of this case. For the purposes of the imposition of default interest and postpetition charges, all loans shall be deemed current as of the filing of this case. Unless any post-petition fees or charges are allowed and are NOT added to the Plan, the loan shall be deemed current as of the date of discharge, and no such charges may thereafter be added.

Plan Section 11.

Discussion

A. Requirements Imposed on SunTrust.

SunTrust does not object to the debtor's proposed cure of the prepetition defaults over time. It does, however, vigorously objects to the affirmative requirements that Section 11(III) of the plan seeks to impose with respect to its administration of the loan. At the outset, it is important to note that the Eastern District of Virginia and the Western District of Virginia have adopted a joint form of chapter 13 plan that debtors are required to use. Loc.Bankr.R. 3015-2(A) & Exh. A (Bankr. E.D. Va., Dec. 1, 2009); Loc.Bankr.R. 3015-1(A)(2) (Bankr. W.D. Va., Dec. 1, 2009). The advantages of a uniform plan are many. A uniform format greatly facilitates review by creditors, the trustee, and the court and increases the efficiency of administering chapter 13 cases. *In re Walat*, 89 B.R. 11, 13 (E.D. Va. 1988); *In re Maupin*, 384 B.R. 421, 426 (Bankr. W.D. Va. 2007). As drafted, the uniform plan addresses the most common ways debts are treated in a chapter 13 case. Of necessity, however, no form plan (except perhaps a very unwieldy one) can anticipate every situation that might arise. Thus, the form plan includes a section (Section 11) in which the debtor can insert provisions specific to his or her particular debts and the proposed treatment of them. *Maupin*, 384 B.R. at 432 ("Paragraph 11 was added to the Uniform Plan so that a debtor might add provisions that are peculiar to the debtor's financial situation, not so that counsel could substitute his uniform plan for that of the Courts.").

The provisions that SunTrust objects to fall squarely within the category of additions that are emphatically not peculiar to this debtor and his financial circumstances but rather seek to substitute counsel's vision of an appropriate uniform plan for the one adopted by the court. Indeed, the additional language does not even make the pretense of specifically addressing

5

SunTrust's claim. Instead, it refers to "Real Property Creditors" as a generic category. There is no assertion that SunTrust has a record or practice of not properly accounting for chapter 13 plan payments or has previously misapplied the debtor's payments. The proposed treatment of SunTrust's claim—the curing of defaults by payment over time while maintaining current payments during the pendency of the case—is by far the most common treatment of mortgage debts in chapter 13 and is squarely provided for by Section 5 of the uniform plan. As explained at length in *Maupin*, the additional provisions that the debtor's counsel has placed in Section 11(III) either restate existing law, and are thus unnecessary; or by paraphrasing existing law may engender unnecessary litigation; or improperly impose requirements that do not exist under the Bankruptcy Code and Rules. Little would be gained by simply repeating Judge Anderson's careful analysis in *Maupin*; suffice it to say that this court agrees entirely.

When a mortgage debt against the debtor's principal residence is provided for under § 1325(a)(5), Bankruptcy Code, the debtor normally makes the regular payments becoming due post-petition under the terms of the note and security instrument,[7] while the trustee makes the payments to cure the prepetition arrears. Inherent in this treatment is that the mortgage servicer must apply the debtor's payments to the payments becoming due post-petition and must apply the payments from the trustee to the prepetition arrears. Effectively, the loan is treated during the course of the case as having two components, and no late fees not already assessed as of the filing date of the case may be assessed if the debtor makes the post-petition payments on time. This is not to say that creditors have not sometimes failed to properly account for chapter 13

---

[7] In some districts, the regular payments are made through the trustee, but that practice (although permitted under the uniform plan) is the exception rather than the rule in this district.

payments. The author of this opinion is personally aware of at least two instances in which mortgage servicers improperly applied the debtor's direct payments to the prepetition arrears, thereby showing the post-petition payments as unpaid, triggering late fees and a motion for relief from the automatic stay. But this conduct needs no plan provision to make it both improper and sanctionable. Indeed, it is presumably in response to such incidents that Congress has specifically made a creditor's willful failure to properly credit payments received under a plan a violation of the discharge injunction:

> The willful failure of a creditor to credit payments received under a plan confirmed under this title, unless the order confirming the plan is revoked, the plan is in default, or the creditor has not received payments required to be made under the plan in the manner required by the plan (including crediting the amounts required under the plan), shall constitute a violation of an injunction under subsection (a)(2) if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor.

§ 524(i), Bankruptcy Code. Thus, Section 11(III), to the extent it requires "Real Property Creditors" to "comply" with § 524(i) of the Bankruptcy Code, and then paraphrases and elaborates on that requirement, is both unnecessary and (because it does not include the qualification that the plan not be in default and that the creditor has received payments required by the plan) arguably misleading. The court's greatest concern, however, is with the prohibition on "assessing or adding any additional fees or charges to the loan obligation . . . (including additional interest, escrow and taxes) unless notice of such fees and charges has been timely filed, *and a proof of claim for such additional amounts has been filed* and has not been disallowed upon objection of the Chapter 13 Trustee or the debtor." Read literally, if a debtor is late in making a post-petition payment, he or she cannot be assessed a late fee without the filing of both a notice and a proof of claim for the late fee. While the loan documents, the security

instrument, or applicable non-bankruptcy law may require giving the debtor notices of, for example, interest rate changes or escrow account adjustments, the court knows of no legal authority for requiring such a notice to be filed with the court, let alone that a proof of claim be filed for it. Faced with a specific instance in which a creditor has misapplied payments, the court might well impose, in addition to corrective or compensatory sanctions, a prophylactic requirement of notice or court approval with respect to future charges. But as a general requirement for all mortgage servicers in all cases, it is clearly imposes an unreasonable burden, and the court declines to approve it.

None of this is to suggest that mortgage services have been blameless in the administration of mortgage loans in chapter 13 cases. At least some of the provisions that debtor's counsel seeks to include in the plan address actual abuses that have been reported both in judicial decisions and professional journals. And, perhaps, the judges of the Eastern and Western District of Virginia should consider whether some, or some variant, of the provisions that debtor's counsel has proposed in Section 11(III) of this plan ought to be incorporated in the uniform plan.[8] But it would utterly defeat the purpose of a uniform plan, and impose a wholly unreasonable burden on mortgage servicers, if they had to comply with potentially dozens of variations as each law firm crafted what it believed to be the ideal set of best practices for mortgage loan administration in chapter 13. For that reason, the court will sustain SunTrust's objection and will deny confirmation unless Section 11(III) is struck in its entirety.

---

[8] Another sensible approach, which has been adopted in some districts to address "hidden" charges that have been accrued by the lender, but not charged to the debtor, during the term of the plan, is a notice to the creditor at the conclusion of the plan that the loan will be deemed fully current as of a specific date, such as the discharge date, unless the creditor files with the court a statement of any unpaid fees or charges that have accrued.

B. Payment of the modified BAC/Mellon Claim Over 30 Years

As noted, the plan proposes to value the rental property securing BAC Home Loans Servicing and to pay out the secured portion of the claim, with interest at 4.25%, in monthly installments of $1,143.27 for 360 months. Because the property is not the debtor's principal residence, the restriction in § 1322(b)(2) on modification of loans secured by real property that is the debtor's principal residence does not apply. Accordingly, there is no bar to a chapter 13 plan bifurcating the loan into a secured component equal to the value of the collateral and an unsecured loan for the balance. § 506(a), Bankruptcy Code. Nor is there a bar to payment of the secured portion of the debt in equal periodic payments having a present value equal to the allowed secured claim. *Id.* § 1325(a)(5)(B)(ii), (iii)(I). The present value requirement is satisfied by the provision for payment of interest at a rate sufficient to compensate the creditor for the delay in receiving payment.[9] However, § 1322(d) of the Bankruptcy Code plainly states that a plan "may not provide for payments over a period that is longer than five years." And although BAC has not objected to the treatment of its claim, a bankruptcy court has an independent duty to ensure that a chapter 13 plan meets the statutory requirements for confirmation. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. —, 130 S.Ct. 1367, 1381 n.14 (2010) ("Section 1325(a) . .

---

[9] Since the creditor has not objected to the interest rate, the court need not decide whether the "Prime-plus" or "formula" rate adopted by the plurality opinion in *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004) would be appropriate with respect to a reamortized real estate loan. *Till* addressed the appropriate interest rate to be paid on a crammed-down automobile loan in a chapter 13 case and concluded that the rate should be based on the current prime rate of interest, with the addition of an appropriate risk factor, which the court suggested would be in the range of 1 to 3 percentage points. Whether starting with the prime rate of interest—which is what banks charge their most credit-worthy customers for short-term loans—rather than a long-term risk-free rate, such as the yield on a 10-year Treasury Bill, when dealing with a 30-year mortgage, is an interesting question, but one that the court need not resolve in the present case.

. *requires* bankruptcy courts to address and correct a defect in a debtor's proposed plan even if no creditor raises the issue.") (emphasis in original); *U.S. v. Easley*, 216 B.R. 543, 544 n.1 (W.D. Va. 1997) (same); *In re Bowles*, 48 B.R. 502, 505 (Bankr. E.D. Va. 1985) (same).

Only one opinion at the court of appeals level has discussed this issue, and it squarely held that a chapter 13 plan is prohibited from reamortizing a debt over a period exceeding the term of the plan. *Enewally v. Washington Mutual Bank (In re Enewally)*, 368 F.3d 1165 (9th Cir. 2004) *cert denied* 545 U.S. 1021, 125 S.Ct. 669, 160 L.Ed.2nd 497 (2004). *Enewally* involved debtors who owned—among other property—rental property encumbered by a first deed of trust with a principal balance greater than the stipulated value of the property. In an amended chapter 13 plan (that was eventually confirmed), the debtors proposed to make payments on the rental property according to the original loan terms. *Id.* at 1167. The debtors also brought an adversary proceeding to bifurcate the mortgage on the rental property into secured and unsecured claims. They then filed a motion to modify the confirmed plan so that they paid only the secured portion of the mortgage over the original term of the loan, which was longer than the 60-month plan term; the unsecured claim of the mortgagee was treated like any other unsecured claim and paid a dividend of 17 cents on the dollar.

Drawing from the Supreme Court's opinions in *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) and *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), the Ninth Circuit held that the debtor had attempted to fashion a remedy not available under the Code. Because *Nobelman* held that a strip-down of an undersecured lien under § 506(a) constituted a modification under § 1322(b)(2), the debtors could not use both § 506(a), and by extension § 1322(b)(2) and § 1322(b)(5) to modify the terms

of a loan by stripping down the unsecured portion and reamortizing the secured portion over the original life of the loan. *Enewally*, 368 F.3d at 1172. Instead, if a claim is modified, that claim must be paid by the time the plan is completed. *Id.* Lower courts have reached similar conclusions. *In re Scott*, 121 B.R. 605, 608-609 (Bankr. E.D. Ok. 1990) (holding that section 1322(b)(2) modification provision requires that all payments be made on the modified claim within the plan period); *In re Stivender*, 301 B.R. 498, 500 (Bankr. S.D. Ohio 2003) (same). There is, to be sure, at least one holding to the contrary. *In re Jerrils*, 2010 WL 297941 (Bankr. S.D. Fla. Jan. 13, 2010). *See also In re McGregor*, 172 BR. 718, 721 (Bankr. D. Mass. 1994) (in dicta suggesting that in a modified plan the debtor could propose to pay the secured portion of the mortgage on her four-unit apartment building over a period in excess of the five-year plan term so long as she paid the contract interest rate and the principal payment provided for in the note); *In re Pruett*, 178 B.R. 7, 8-9 (Bankr. N.D. Ala. 1995) (same). However, the court does not find the reasoning of those cases to be persuasive and believes that on this issue the Fourth Circuit would follow the holding of the Ninth.

The debtor's proposed treatment of the BAC/Mellon mortgage is indistinguishable from the attempted treatment in *Enewally*, with the minor exception that the plan in this case would slightly reduce the original repayment period.[10] However, he is not proceeding under § 1322(b)(5), which allows the cure of a default and the maintenance of payments while the case in pending on a claim on which the last payment is due after the final payment under the plan is due. Section 1322(b)(5) allows a debtor to take advantage of a repayment period that exceeds the

---

[10] The BAC/Mellon note matures in 2046, while the 30-year amortization provided in the plan would result in the reduced claim being paid out in 2040.

term of the plan. To do so, however, the debtor must (except for curing defaults) pay the debt according to its original terms. By reducing BAC's secured claim from $400,241 to $232,401 and by reducing the interest rate, the debtor is no longer maintaining payments but instead is modifying the debt. While such modifications are permitted under § 1322(b)(2), the term of the modified loan cannot extend beyond the five-year maximum set by § 1322(d)(1)(C) and (d)(2)(C), Bankruptcy Code, since it is only by proceeding under the cure-and-maintain provisions of Section 1322(b)(5) that the debtor can take advantage of a payment term extending beyond the term of the plan.

Indeed, to permit a plan to pay a modified debt over a period longer than the plan term would create an anomaly with respect to the debtor's discharge at the completion of plan payments. Long-term debts treated under the cure-and-maintain provisions of § 1322(b)(5) are excluded from the discharge that a debtor receives upon completing plan payments in a chapter 13 case. § 1328(a)(1), Bankruptcy Code. But a long-term debt treated other than under § 1322(b)(5) would not be excluded from discharge, thereby effectively converting the BAC/Mellon note into non-recourse debt, so that in the event of a future default, the noteholder would be limited to its *in rem* remedies against the collateral, contrary to what would appear to be Congress's intent that payment obligations not paid during the plan but extending beyond the end of the plan not be discharged.

Only brief discussion is required with respect to two additional arguments the debtor has advanced in support of allowing the reamortized payments to extend beyond the plan term. First, he argues that because he will make payments directly to BAC on the reamortized loan, the payments are not being made "under the plan" and are therefore not subject to the limitation of §

1322(d)(1). The court notes, first, that the statute is not phrased in terms of payments "under the plan" or "through the trustee." Rather, what the statute says is that the plan "may not *provide for payments* over a period exceeding five years." And in any event, simply because payments are not being made through the trustee does not mean they are not being made "under" the plan. If the plan defines the payment terms—and in this case it clearly does—then the payments are being made "under" the plan regardless of whether the debtor pays the creditor directly or pays through the trustee.[11] Here, the plan plainly "provides for payments" with respect to the BAC/Mellon mortgage and is therefore subject to the five-year limit on such payments in § 1322(d)(1).

The debtor's second argument is that BAC, by not objecting to the treatment of its claim, has "accepted" it. See § 1328(a)(5)(A), Bankruptcy Code. As Judge Mayer of this court has previously held, however, a creditor's failure to respond to a motion is not the equivalent of actual consent. *In re Takeout Taxi Holdings, Inc.*, 307 B.R. 525, 534-535 (Bankr. E.D. Va. 2004) (holding that secured creditor did not consent to the sale of personal property under § 363(f)(2) free and clear of liens simply by not filing a response to the trustee's motion). Although BAC did not file an objection to confirmation of the plan, this does not mean that it consents to a treatment otherwise at odds with the Bankruptcy Code.

---

[11] *See* § 1326(c), Bankruptcy Code (recognizing that "payments to creditors under the plan" may be made other than by trustee if so provided in the plan or confirmation order); 2 William L. Norton, Jr., Bankr. L. & Prac. 3d § 29:2 ("Arguably, it can be said that a plan under Chapter 13 of the Code is intended to provide for all payments on all debts, whether to be paid through the trustee or directly by the debtor, and that both types of payments would be 'under the plan.'"); *In re Hankins*, 62 B.R. 831. 835 (Bankr. W.D. Va. 1986) ("[E]ven though the Debtors propose to make disbursements directly to the secured creditors, such payments are nonetheless payments 'under the Plan' in the sense that they are dealt with by the Plan[.]").

A separate order will be entered denying confirmation with leave to file a modified plan.

Date: _____   _____
  Stephen S. Mitchell
Alexandria, Virginia   United States Bankruptcy Judge


Copies to:

Daniel M. Press, Esquire
Chung & Press, P.C.
6718 Whittier Ave., Suite 200
McLean, VA 22101
Counsel for the debtor

William F. Russell, Jr.
4356 Normandy Court
Fredericksburg, VA 22408
Debtor

Eric David White, Esquire
Samuel I. White, P.C.
1804 Staples Mill Road, Suite 200
Richmond, VA 23230
Counsel for SunTrust Mortgage, Inc.

Thomas P. Gorman, Esquire
300 N. Washington Street, Suite 400
Alexandria, VA 22314
Chapter 13 trustee